UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAVERMAN PROPERTIES, LLC, and
FOUR J GRAND RAPIDS, LLC,

                Plaintiffs,                                  Case No. 1:10-cv-941

v.                                                   HON. JANET T. NEFF

BOSTON PIZZA RESTAURANTS, LP,
MICHAEL BEST, and JIM BRUMLEVE,

                Defendants.
_____/

## OPINION

Pending before the Court in this diversity case is Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) (Dkt 17). Plaintiffs filed a Response in opposition (Dkt 20), to which Defendants filed a Reply (Dkt 21). Further, on leave granted, Plaintiffs filed a Sur-Reply (Dkt 26). Having carefully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments surrounding this franchise dispute are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the following reasons, the Court concludes that Defendants' motion is properly granted and Plaintiffs' Complaint dismissed pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction inasmuch as Plaintiffs' claims are subject to the arbitration provision in the underlying Franchise Agreement.

## I. BACKGROUND

Plaintiff Four J Grand Rapids, LLC (Four J) is a franchisee of Defendant Boston Pizza Restaurants LP (Boston) (Compl. ¶ 8). Boston is a limited partnership with citizenship in Texas (*id.*

¶ 3).  Defendants Michael Best and Jim Brumleve are Boston's Chief Operating Officer and Vice President of Finance, respectively (*id.* ¶ 9).  Best and Brumleve are Texas residents (*id.* ¶ 4).

Four J purchased its Boston franchise in 2008 from "the Zap Group" (Franchise Agreement [Defs. Mot. Br., Ex. A]; Transfer Agreement [Defs. Mot. Br., Ex. B]).[1]  Four J operates its franchised restaurant in Grand Rapids, Michigan (Compl. ¶ 10).  Plaintiff Braverman Properties, LLC (Braverman), a company related to Four J, owns the real estate and other assets of the restaurant Four J operates (*id.*).

Plaintiffs aver that Boston holds a right to purchase the real estate and other assets of the restaurant business on the same terms any third party would offer Plaintiffs (Compl. ¶ 11).  The "Franchisor's Right of First Refusal" within the Franchise Agreement provides that Boston has a right to purchase the real estate and other assets of the business "on the same terms and conditions" offered by a third party (Franchise Agreement § XII(E), p 26).

The Franchise Agreement also includes an arbitration provision, which provides that "[t]he parties agree that any and all controversies, claims and disputes between them arising out of or related to this Agreement that cannot be amicably settled shall be finally resolved by submitting such matter to the American Arbitration Association (the 'AAA') in Dallas, Texas for binding arbitration under the AAA's Commercial Arbitration Rules. . . . In accordance with the terms of the Federal Arbitration Act, the arbitrator shall hear the dispute in Dallas, Texas" (Franchise Agreement § XXVI, p 43).

---

[1]Plaintiffs did not attach copies of the Transfer or Franchise Agreements to their Complaint, but this Court may properly consider the documents in considering Defendants' argument under FED. R. CIV. P. 12(b)(1), *see Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003), and Defendants' argument under FED. R. CIV. P. 12(b)(6), *see Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335-36 (6th Cir. 2007).

On April 30, 2010, Plaintiffs entered into a purchase agreement to sell their restaurant business to a third party, Agostino Vitale, the owner of an independent Italian restaurant in Grand Rapids (Compl. ¶¶ 12, 15-16). The parties to the purchase agreement agreed to close on the sale of the business on September 18, 2010 (*id.* ¶ 14). It is not disputed that Vitale intended to de-brand Plaintiffs' restaurant, thereby ending this particular Boston franchise in Grand Rapids.

On June 4, 2010, pursuant to the terms of the Franchise Agreement, Boston notified Braverman in writing of its intent to exercise its Right of First Refusal to purchase Four J's interest in, and the assets of, the restaurant on the same terms and conditions Vitale had offered Plaintiffs (Compl. ¶ 19, Ex. 3). However, Boston subsequently wrote Braverman on August 27, 2010, advising that, "in accordance with Section 19(A)(i) of the Addendum [related to "Buyer's receipt of financing for the purchase"], please find this correspondence as Boston's formal notice of its intent to terminate the [Purchase] Agreement as of the date of this letter...." (*id.* ¶ 34, Ex. 4). Plaintiffs allege that by the time of Boston's purported termination, Vitale was no longer interested in buying the business (*id.* ¶ 38). Plaintiffs further allege that "Vitale has since represented, however, that had Boston's not exercised its Purchase Right, Mr. Vitale would have bought the Business under the terms of the Agreement" (*id.* ¶ 39).

On September 24, 2010, Plaintiffs filed this suit against Defendants, alleging common law fraud (Count I); breach of contract against Boston (Count II); tortious interference with a business relationship (Count III); and violation of Michigan's Franchise Investment Law, MICH. COMP. LAWS § 445.1505 (Count IV). On October 18, 2010, Defendants filed a Pre-Motion Conference request, proposing to file a Motion to Dismiss (Dkts 7, 9). Following a Pre-Motion Conference with counsel on December 7, 2010, the Court issued a briefing schedule, permitting Defendants to file their proposed dispositive motion (Dkts 13-14).

3

The parties filed their motion papers in January 2011 (Dkts 17-26).  Defendants argue that dismissal of Plaintiffs' Complaint is warranted under either of two alternative bases.  First, under FED. R. CIV. P. 12(b)(1) (subject-matter jurisdiction), Defendants argue that Plaintiffs' claims are subject to the arbitration provision in the underlying Franchise Agreement.  Second, under FED. R. CIV. P. 12(b)(6) (failure to state a claim), Defendants argue that each of Plaintiffs' four claims is deficient.  Plaintiffs respond that this case is not subject to the arbitration provision referenced by Defendants and that none of the counts in the Complaint fails to state a claim.

## II.  ANALYSIS

### A.  Motion Standards

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for a lack of subject-matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  "When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction."  *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002) (quoting *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000)).  "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."  *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  "'A [Rule 12(b)(6)] motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations.'"  *Lambert v. Hartman,* 517 F.3d 433, 439 (6th Cir. 2008) (quoting *Golden v. City of Columbus,* 404 F.3d 950, 958-59 (6th Cir. 2005)).  In deciding the motion, the court must treat all well-pleaded allegations in the complaint as true and draw all

4

reasonable inferences from those allegations in favor of the nonmoving party. *Id.* "When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

## B. Subject-Matter Jurisdiction

The Court turns first to Defendants' argument under FED. R. CIV. P. 12(b)(1) that this Court lacks subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Indeed, the Court has an obligation to dismiss an action "at any time" it decides that "it lacks subject-matter jurisdiction." FED. R. CIV. P. 12(h)(3). Here, because the parties are of diverse citizenship and the requisite minimum amount is in controversy, this Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332.

The question posed by Defendants' argument implicates the effect of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.* "When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Preston v. Ferrer*, 552 U.S. 346, 359 (2008). "An arbitration agreement 'requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate.'" *Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008) (quoting *Liveware Publishing, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 78-79 (D. Del. 2003)).[2] In

---

[2]As discussed by the district court in *Moore*, 544 F. Supp. 2d at 744-45, because the existence of a valid arbitration clause does not technically *deprive* a court of subject-matter jurisdiction, there is some question whether an argument for dismissal based on the existence of an arbitration clause would be more precisely brought under Rule 12(b)(6) rather than Rule 12(b)(1).

agreeing to arbitrate, a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

"Congress enacted the FAA to overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, ___ U.S. ___; 129 S. Ct. 1262, 1271 (2009) (internal citations and quotation marks omitted). "The 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___; 131 S. Ct. 1740, 1748 (2011) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). To that end, § 2 of the FAA provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

Within the context of a motion to stay proceedings and compel arbitration under the FAA, the Sixth Circuit Court of Appeals has set forth a district court's four tasks as the following: "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000), cert. den. 531 U.S. 1148 (2001). Although this Court is not located in the district where the Franchise

---

However, as the court in *Moore* concluded, the distinction is immaterial where, based on either ground, arbitration is required.

Agreement indicates arbitration is to take place, the Court has authority to make these preliminary determinations of arbitrability in order to decide whether this Court should forego the exercise of jurisdiction in deference to the parties' contractual agreement. *See, e.g., Telos Holdings, Inc. v. Cascade, GmbH*, No. 3:09-0380, 2009 WL 3415157 (M.D. Tenn., Oct. 19, 2009); *Gone To The Beach, LLC v. Choicepoint Svcs., Inc.*, 434 F. Supp. 2d 534, 538 (W.D. Tenn., 2006); *Geo Vantage of Ohio, LLC. v. GeoVantage, Inc.*, No. 2:05-cv-1145, 2006 WL 2583379, at *11 (S.D. Ohio, Sept. 6, 2006).

1.      ***The Parties' Agreement to Arbitrate***

The Court's first task, then, is to determine whether the parties agreed to arbitrate. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

Plaintiffs' only argument in this regard is that the Franchise Agreement–and therefore the arbitration provision within–does not apply to Four J where Four J's predecessor, "the Zap Group," but not either Plaintiff at bar, signed the Franchise Agreement (Dkt 20 at 5, 19-20). It is well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide, using ordinary principles that govern the formation of contracts. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, ___ U.S. ___; 130 S. Ct. 2847, 2855-56 (2010).

The Court agrees with Defendants that Plaintiffs' argument is specious. The arbitration provision is not inapplicable to Plaintiffs merely because it appears in a document separate from the Transfer Agreement Plaintiff Four J signed. As Defendants point out (Dkt 18 at 8-9), the Transfer Agreement references the Franchise Agreement in the Recitals and unambiguously provides that

7

Plaintiff Four J "assumes full and unconditional liability for, and agrees to perform, all obligations, covenants and agreements under the Franchise arising on and after the Closing Date" (Transfer Agreement ¶ 1, p 2). The cardinal rule is that, in the absence of fraud or wilful deceit, neither of which is alleged here, "'one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions.'" *Stout*, 228 F.3d at 715 (quoting *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960)). The Court therefore concludes that the parties have a valid arbitration agreement.

**2.** *The Scope of the Parties' Agreement*

This Court's next task is to determine the scope of the parties' arbitration agreement and decide whether the claims at bar are covered by the arbitration provision. It is well settled that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. *Granite Rock Co.*, 130 S. Ct. at 2855; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

Again, the arbitration provision in this case provides that "[t]he parties agree that any and all controversies, claims and disputes between them arising out of or related to this Agreement that cannot be amicably settled shall be finally resolved by submitting such matter to the American Arbitration Association (the 'AAA') in Dallas, Texas for binding arbitration" (Franchise Agreement § XXVI, p 43).

Defendants argue that the arbitration provision in the Franchise Agreement is broad and encompasses Plaintiffs' claims within the scope of its terms (Dkt 18 at 16). According to Defendants, each of the four claims in the Complaint is premised on the identical assertion, to wit: that Boston exercised a Right of First Refusal in the Franchise Agreement and did not somehow perform as required (*id.*). Defendants emphasize that even if factual questions in the case concern

8

terms in the Purchase Agreement, the case still arises from and relates to the parties' franchise relationship as set forth in the Franchise Agreement (*id.*).

In response, Plaintiffs contend that "[n]ot a single claim in the Complaint is for breach of any provision in the [Franchise] Agreement" (Dkt 20 at 16). According to Plaintiffs, "[e]very claim in the Complaint is based solely on Defendants' breach of the Purchase Agreement," and Defendants are "overreading" Supreme Court case law on the governing principles on arbitrability (*id.*).

The Court agrees with Defendants that Plaintiffs' claims fall within the ambit of the parties' agreement to arbitrate. As a threshold matter, the Sixth Circuit has held that an arbitration clause like the one at bar, which requires arbitration of any dispute arising out of an agreement, is "extremely broad." *See Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007); *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 578 (6th Cir. 2003); *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983).

For broadly worded arbitration clauses, covering all disputes arising under an agreement, the test for determining the scope of the clause is "whether 'an action could be maintained without reference to the contract or relationship at issue.' " *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 813 (6th Cir. 2008) (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003)). If such a reference is unnecessary, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise. *Id.*

Resolution of Plaintiffs' claims here will necessitate reference to the Franchise Agreement containing the arbitration provision. In Count I, Plaintiffs' common law fraud claim concerns Plaintiffs' allegation that Defendants defrauded Plaintiffs by "promising to buy the Business on the terms of the Agreement in bad faith without intention of performance" (Compl. ¶ 45). The "promise to buy" is premised on the Right of First Refusal granted to Defendant Boston by the Franchise

Agreement.  Accordingly, the parameters of this right and the allegedly fraudulent manner in which Defendants exercised this right is a "controversy, claim or dispute ... arising out of or related to" the Franchise Agreement such that the claim is arbitrable.

Plaintiffs' breach of contract claim in Count II concerns Defendant Boston's alleged breach of its "duty to perform the Purchase Agreement in good faith," including a duty to "perform[] its due diligence, including without limitation, seek financing, in good faith" and "not prevent or hinder the satisfaction of the Contingencies" (Compl. ¶¶ 49-51).  Again, any duty to perform the terms and conditions of the Purchase Agreement in good faith is premised on the right granted by the Franchise Agreement to Defendant Boston to purchase the seller's interest "on the same terms and conditions offered by the third party."  Accordingly, the duty arising from these terms and conditions, and whether Defendant Boston breached the duty, is a "controversy, claim or dispute ... arising out of or related to" the Franchise Agreement such that the claim is arbitrable.

In Plaintiffs' tortious interference claim in Count III, Plaintiffs allege that Defendants "improperly and intentionally interfered with Plaintiffs' business relationship with Mr. Vitale in several ways, including, without limitation, exercising its Purchase Right with no intention of buying the Business; by conducting no due diligence, including, without limitation, failing to make any efforts to seek financing; and purportedly terminating the Agreement without closing on the sale; all thereby denying Plaintiffs the opportunity to sell the Business either to Mr. Vitale or Boston's" (Compl. ¶ 57).  Plaintiffs' challenge to the manner in which Defendants exercised the right to purchase is also a "controversy, claim or dispute ... arising out of or related to" the Franchise Agreement such that the claim is arbitrable.

Last, in Count IV, Plaintiffs allege that Defendants violated section 5 of Michigan's Franchise Investment Law (MFIL), which provides that "[a] person shall not, in connection with the

filing, offer, sale, or purchase of any franchise, directly or indirectly:  (a) Employ any device, scheme, or artifice to defraud; (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; [or] (c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  MICH. COMP. LAWS § 445.1505.  Plaintiffs allege that Defendants violated the MFIL "by employing a device, scheme, and artifice to defraud Plaintiffs, and by engaging in acts which operated as a fraud and deceit on Plaintiffs by promising to buy the Business on the terms of the Agreement in bad faith without intention of performance" (Compl. ¶ 61).  Like Plaintiffs' common law fraud claim in Count I, the challenge in Plaintiffs' Count IV to the manner in which Defendants exercised their right to purchase is a "controversy, claim or dispute ... arising out of or related to" the Franchise Agreement such that the claim is arbitrable.

In sum, the parties' arbitration provision covers the claims Plaintiffs present in this suit, not merely because resolution of the claims requires reference to the Franchise Agreement but because the Franchise Agreement gives rise to and defines the Right to Purchase that is the factual and legal core of Plaintiffs' claims at bar.  *See also Nestle Waters,* 505 F.2d at 505-06 (discussing the import of an arbitration clause that was "written into the contract that was executed first and pursuant to which all of the subsequent agreements and documents were executed").  Plaintiffs, who bear the burden of establishing this Court's jurisdiction, have not shown that the parties intended to exclude the present claims from the broad language of their arbitration provision.

**3.**     *Dismissal*

Having determined that this Court is required to forego the exercise of its jurisdiction over this action in deference to the parties' contractual agreement, the Court's last task is to address

Defendants' request that this Court both "dismiss the action ... and enter an order compelling arbitration" (Dkt 18 at 18). While this Court agrees that dismissal is appropriate, the Court determines that the FAA does not provide this Court with power to compel arbitration in another district.

Turning first to the request for an order to compel, § 4 of the FAA provides, in pertinent part, that where a party invokes the jurisdiction of a federal court over a matter that the court could adjudicate but for the presence of an arbitration clause, "[t]he court shall ... direc[t] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 4 further instructs that the arbitration must take place "within the district in which the petition for an order directing such arbitration is filed." *Id.*

Here, the parties agreed to arbitrate their dispute in Dallas, Texas, a jurisdiction outside this judicial district. While the parties do not address this issue, the Sixth Circuit has clearly concluded that "the FAA prevents federal courts from compelling arbitration outside of their own district." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) (opining that the district court in Ohio lacked statutory authority to compel arbitration in France). "[W]here the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4." *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997) (opining that the district court in Ohio lacked statutory authority to compel arbitration in the state of Washington). *See also Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (opining that "[o]therwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless"). Defendants' motion to compel arbitration must be made to a district court within the forum to which the parties agreed.

The Court agrees that Defendants are entitled to dismissal rather than merely a stay of this litigation where all of Plaintiffs' claims fall wholly within the scope of the binding arbitration provision.  "[I]f any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory." *Hensel v. Cargill, Inc.*, 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) (referencing § 3 of the FAA).  "However, litigation in which all claims are referred to arbitration may be dismissed." *Id.* (citing *Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)); *see also McGill v Meijer Inc.*, No. 1:10-cv-1055, 2011 WL 1166895, at *4 (W.D. Mich., Mar. 28, 2011).  Defendants did not request a stay of this case, and the Sixth Circuit has rejected the argument that the FAA *requires* district courts to stay suits pending arbitration rather than dismiss them.  *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975, 2009 WL 4408187, at *3 (6th Cir. 2009) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990) (stating that it was not "error for the district court to dismiss the complaint" after ordering arbitration)).

For these reasons, this Court declines Defendants' request for entry of an order compelling arbitration but will grant its request for dismissal of this action.

### C.  Failure to State a Claim

Because the Court has decided that dismissal under Fed. R. Civ. P. 12(b)(1) is proper, the Court declines to address Defendants' alternative argument for dismissal under Rule 12(b)(6) for failure to state a claim.  *See AT&T Techs.,* 475 U.S. at 650 ("The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.  The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.") (quoting *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564,

568 (1960)); *United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 132-33 (6th Cir. 1994) (refusing to consider the merits of a claim after determining the claim was within the scope of the parties' arbitration agreement).

### III. CONCLUSION

For the foregoing reasons, the Court determines that Defendants' Motion to Dismiss (Dkt 17) is properly granted and Plaintiffs' Complaint dismissed pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction.  A corresponding Order and Judgment will be entered consistent with this Opinion.


DATED: June 27, 2011                        /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge

14